UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| v. | ) | 1:17-cr-302 (LMB) |
| | ) | |
| NIKOLAI BOSYK, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# MOTION FOR COMPASSIONATE RELEASE
# PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)

Nikolai Bosyk is a non-violent offender with no prior record. He has had no disciplinary issues in prison and has been determined to be at Minimum Risk of recidivism. He has a stable and verifiable release plan, living with his wife and young son in Hamilton, Virginia. In short, his early release from incarceration presents no danger to the community. His continued incarceration while the Covid-19 pandemic rages, on the other hand, poses a high risk to Mr. Bosyk.

As his BOP medical records document, Mr. Bosyk suffers from obesity and abnormal heartbeat and breathing. Complicating his risk further, is the fact that Mr. Bosyk has Type A blood which recent data has shown significantly increases his risk for respiratory failure if he is infected by the coronavirus.

While it is true that the BOP is currently reporting that only 1 inmate has been diagnosed with Covid-19 at FCI Allenwood, the experience at other BOP facilities shows that the time to act is *before* the explosion of a greater outbreak. Accordingly, Mr. Bosyk respectfully moves this Court to grant him immediate compassionate release under 18 U.S.C. § 3582(c)(1)(A).

# PROCEDURAL BACKGROUND

On February 12, 2018, Mr. Bosyk pled guilty to a single count of Receipt of Child Pornography. On May 7, 2018, this Court sentenced Mr. Bosyk to a total sentence of 60 months. Mr. Bosyk is serving his sentence at FCI Allenwood, and his projected release date is September 10, 2022. He has now served more than 35 months of his 60 months – approximately 58% of his sentence. According to the PSR, Mr. Bosyk had no prior record and was on pretrial release from October 24, 2017 through his incarceration without incident.

Mr. Bosyk acting *pro se* previously filed three motions for Early Release with the Court. In the first motion, Mr. Bosyk had asked for a prisoner furlough to assist with his son's care while the son's daycare was closed due to the coronavirus. The Court denied the motion because Mr. Bosyk had not identified any health issues or circumstances to render his situation unique and the authority to allow the requested furlough resides with the Bureau of Prisons. In his second motion, Mr. Bosyk sought home confinement for the remainder of his sentence. The Court denied the motion because Mr. Bosyk had not fully exhausted the administrative process with the Bureau of Prisons. Mr. Bosyk then filed a third motion after having exhausted his administrative remedies. The Court denied this motion because Mr. Bosyk "has still not established extraordinary and compelling circumstances for release." 4/22/20 Order at 2. Specifically, the Court held that Mr. Bosyk had failed to corroborate his health conditions, with the exception of obesity.

Since the Court's order, Covid-19 has grown both in spread and severity. Specific to Mr. Bosyk's situation, medical studies have revealed that obese individuals are even more of a risk than previously believed of suffering severe complications to Covid-19. Accordingly, Mr. Bosyk now files this Motion for Compassionate Release along with attached BOP medical

records.

## ARGUMENT

Congress originally enacted the First Step Act in 1984. *See* Pub. L. No. 98-473, 98 Stat. 2030 (1984). The "compassionate release" provision of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A)(i), permitted a court to alter a sentence upon a motion by the Director of the BOP. But, because the BOP rarely used this authority, Congress amended the compassionate release mechanism when it enacted the First Step Act of 2018. *See* Pub. L. 115-391, 132 Stat. 5239 (2018).

As amended, the compassionate release provision of 18 USC § 3582(c), provides, in pertinent part, that "the court ... upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment ... if it finds that extraordinary and compelling reasons warrant such reduction" and if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 USC § 3582(c)(1)(A)(i). Before granting compassionate release, the Sentencing Commission directs courts to consider when a defendant poses "a danger to the safety of any other person or to the community. USSG § 1B1.13.

Mr. Bosyk has fully exhausted his administrative remedies, *see*, Exhibit A, and the Covid-19 pandemic presents an extraordinary and compelling reason for Mr. Bosyk's release. Indeed, beyond the significant Covid-19 risks associated with incarceration, Mr. Bosyk is specifically at a heightened risk of serious illness due to his pre-existing medical conditions. Given that Mr. Bosyk is a non-violent offender with strong family support and a stable residence,

compassionate release is consistent with Sentencing Commission statements and appropriate.

> 1. **The Covid-19 pandemic presents extraordinary and compelling reasons for Mr. Bosyk's release**

As the Court is aware, Covid-19 has spread widely – and rapidly – throughout the United States. Positive cases have been confirmed in all 50 states, the District of Columbia, Puerto Rico, Guam, the Northern Mariana Islands, and the U.S. Virgin Islands. *See* CDC, COVID-19 Cases in the US.[1] Once coronavirus enters a prison, conditions of confinement create the ideal environment for its transmission. Joseph A. Bick (2007), *Infection Control in Jails and Prisons*, Clinical Infectious Diseases 45(8):1047-1055.[2] "Prisons are petri dishes for contagious respiratory illnesses." Letters to the Editor: *A prison doctor's stark warning on coronavirus, jails and prisons*, LATimes (Mar. 20, 2020)[3]. Inmates cycle in and out of jails and prisons, and people who work in the facilities leave and return daily. Incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings." Achieving A Fair And Effective COVID-19 Response: *An Open Letter to Vice- President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States* (March 2, 2020).[4] "People in jails and prisons cannot practice social distancing, control their exposure to large groups, practice increased hygiene, wear protective clothing, obtain specific products for cleaning and laundry, avoid frequently touched surfaces, or sanitize their own environment." *United States v. Skelos*, 2020 WL 1847558, at *1 (S.D.N.Y. Apr. 12, 2020).

---

[1] https://www.cdc.gov/coronavirus/2019- ncov/cases-updates/cases-in-us.html
[2] https://doi.org/10.1086/521910
[3] https://www.latimes.com/california/story/2020- 03-20/prison-doctors-stark-warning-on-coronavirus-and-incarceration
[4] https://bit.ly/2W9V6oS

While there is only one reported case at FCI Allenwood, this offers little encouragement. As of August 18, 2020, BOP has reported over 11,335 inmates and over 1435 staff who have tested positive for Covid-19, including nearly 1,378 current inmate cases and, thus far, 114 inmate deaths.[5] This rapid spread confirms that, despite its efforts, BOP cannot adequately safeguard prisoners. Indeed, the infection rate in prisons is *more than five and a half times higher* than the infection rate in the general population in the United States. Saloner, B., et al., *Covid-19 Cases and Deaths in Federal and State Prisons*, JAMA. And this is likely a severe undercount. *See, e.g., More Than 70% of Inmates Tested in Federal Prisons Have Coronavirus*, The Wall Street Journal, April 30, 2020.[6] Not only does Covid-19 spread more readily in prison, it is more deadly. A recent study published on July 8, 2020, indicates that the death rate from Covid-19 in federal prisons is *more than three times higher* than the general population. Saloner, B., et al. In sum, the lack of reported cases at FCI Allenwood simply emphasizes that now is the best time to get Mr. Bosyk out safely.

In granting compassionate release, many courts have acknowledged that vulnerable defendants like Mr. Bosyk are at grave risk despite BOP precaution. "Even in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others." *United States v. Esparza*, 2020 WL 1696084 (D. Idaho. Apr. 7, 2020); *see also United States v. Muniz*, 2020 WL 1540325, at *1 (S.D. Tex. Mar. 30, 2020) ("[W]hile the Court is aware of the measures taken by the Federal Bureau of Prisons, news reports of the virus's spread in detention centers . . . demonstrate that individuals housed within our prison systems nonetheless remain particularly vulnerable to infection.").

---

[5] *See* https://www.bop.gov/coronavirus/ (last accessed August 18, 2020).
[6] https://www.wsj.com/articles/more-than-70-of-inmates-tested-in-federal-prisons-have-coronavirus-11588252023

Accordingly, courts in the Fourth Circuit and across the country have concluded that a defendant's vulnerability to Covid-19 constitutes an "extraordinary and compelling reason" in favor of compassionate release. *See, e.g.*, *United States v. Poulios*, 2020 WL 1922775, at *3 (E.D. Va. Apr. 21, 2020) (granting compassionate release "because of the great risk that COVID-19 poses to a person of [defendant's] age with underlying health conditions"); *United States v. Jones*, No. 3:11-cr-249 (E.D. Va. Apr. 3, 2020) (granting compassionate release and converting remainder of sentence to home confinement in light of Covid-19); *United States v. Edwards*, 2020 WL 1650406, at *6 (W.D. Va. Apr. 2, 2020) (granting compassionate release); *United States v. Collins*, 2020 WL 1506176 (D. Md. Mar. 30, 2020) (granting compassionate release to "non-violent drug offender who has already served a lengthy sentence" even though defendant did not have underlying health condition).

Mr. Bosyk is at heightened risk of serious, in fact fatal, complications from Covid-19. As noted above, Mr. Bosyk suffers from obesity, varicose veins, and abnormal heartbeat and breathing. *See*, Exhibits B, C, D, E & F.[7]

Obesity, of course, is one of the principal risk factors identified by the CDC as a condition that renders a person at high risk of serious complications or death should they contract Covid-19. See CDC.gov, *Coronavirus Disease 2019 (COVID-19) – High-Risk Conditions.*[8] Indeed, an April 2020 study by doctors at NYU Langone Health Center in New York City, found that "obesity of patients was the single biggest [chronic] factor, after age, in whether those with COVID-19 had to be admitted to a hospital." Tiernan Ray, *NYU Scientists—Largest US study of COVID-19 finds obesity the single biggest 'chronic' factor in New York City's hospitalizations*,

---

[7] Mr. Bosyk is filing this Motion without an expert opinion as numerous publically-available studies set out the comorbidities for Covid-19 in detail, and time is of the essence.
[8] https://www.cdc.gov/coronavirus/2019-ncov/hcp/underlying-conditions.html

ZDNet (Apr. 12, 2020).[9] Obesity was defined in the NYU study as a BMI of 30 and higher. *Id.* Mr. Bosyk thus falls squarely in a Covid-19 high risk category due to his BMI of over 51.5. See Exhibit C at 1.[10] Additionally, the CDC BMI calculator contains an alert stating: "COVID-19: Severe Obesity (a BMI of 40 or Higher) May Raise Risk of Severe Illness."). CDC Adult BMI Calculator. Recent studies have provided further confirmation of the risk of being obese. For example, a paper published just July 1, 2020, in the European Journal of Endocrinology concluded that

> "Obesity is a strong, independent risk factor for respiratory failure, admission to the ICU and death among COVID-19 patients. Whereas a BMI ≥ 30 kg/m2 identifies a population of patients at high risk for severe illness, a BMI ≥ 35 kg/m2 dramatically increases the risk of death."

Rottoli, M., Obesity and COVID 19, European Journal of Endocrinology.[11]

Given the substantial risk of Covid-19 to an individual suffering from obesity, it is unsurprising that numerous courts have found obesity to be a compelling reason for release. *See, e.g., United States v. Delgado*, 2020 WL 2464685, at *3 (D. Conn. Apr. 30, 2020); see also, *United States v. Williams*, 2020 WL 3073320, at *4 (D. Md. June 10, 2020)(finding Defendant's obesity was an extraordinary and compelling reason for release); *United States v. Zuckerman*, 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (finding Defendant's age, diabetes, hypertension, and obesity satisfied an extraordinary and compelling reason); *United States v. Quintero*, 2020 WL 2175171, at *1 (W.D.N.Y. May 6, 2020) (finding Defendant's diabetes,

---

[9] https://www.zdnet.com/article/nyu-scientists-largest-u-s-study-of-covid-19-finds-obesity-the-single-biggest-factor-in-new-york-critical-cases/

[10] This BMI is reflected in the BOP medical records. In his pro se motion, Mr. Bosyk indicates that his current weight is 370 lbs, which would result in a lower – although still obese - BMI of 47.5. BMI is calculated with the following formula:

$$\text{BMI} = 703 \times \frac{\text{mass (lbs)}}{\text{height}^2 \text{ (in)}}$$

[11] https://eje.bioscientifica.com/view/journals/eje/aop/eje-20-0541/eje-20-0541.xml

compromised immune system, obesity, and hypertension satisfied an extraordinary and compelling reason); *United States v. Foreman*, 2020 WL 2315908, at *4 (D. Conn. May 11, 2020) (finding Defendant's age, hypertension, and obesity satisfied an extraordinary and compelling reason); *United States v. Ullings*, 2020 WL 2394096, at *4 (N.D. Ga. May 12, 2020) (finding Defendant's age, hypertension, and obesity satisfied an extraordinary and compelling reason).

Additionally, as recounted in his *pro se* motion and corroborated in his BOP medical records, Mr. Bosyk has congenital heart valve defects, resulting in a left ventricular fraction rate of 55-60%, *see* Exhibit D at 1-2, heart palpitations and abnormal heart beat, *see* Exhibit E at 3, and circulatory issues, manifest in his varicose veins, *see* Exhibit F at 2.

While Covid-19 was initially thought to attack only the lungs, it quickly became apparent that it was attacking the heart as well and causing lasting damage to the heart even in recovered cases. *See*, *e.g.*, Guzik TJ, et al., *COVID-19 and the cardiovascular system: implications for risk assessment, diagnosis, and treatment options*, Cardiovasc Res. 2020;116(10)[12]. Indeed, "the co-authors detail evidence of myocardial injury in 20–40% of hospitalized cases manifesting as cardiac chest pain, fulminant heart failure, cardiac arrhythmias, and cardiac death." *Id.*

Given the disease's progression it is perhaps unsurprising that individual's with cardiovascular issues have been found to suffer sever complications from Covid-19 at a higher rate than the general population. In a study of Covid-19 fatalities issued by *The Lancet*, data was presented that those with cardiovascular disease had a 10.5% fatality rate. Chen, N., et al., *Epidemiological and Clinical Characteristics of 99 cases of 2019 novel coronavirus pneumonia*

---

[12] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7197627

*in Wuhan, China: a descriptive study*, The Lancet.[13] And recent studies have only confirmed that Covid-19 disproportionately affects people with pre-existing cardiovascular disease. Mehra, M. et al., *Cardiovascular Disease, Drug Therapy, and Mortality in Covid-19*, N Engl J Med 2020; 382:e102, DOI: 10.1056/NEJMoa2007621, June 18, 2020.[14]

Recent studies have revealed that Mr. Bosyk's blood type places him at even further risk. Individuals with Type A blood like Mr. Bosyk, have a 45 percent increased risk of having respiratory failure. Ellinghaus, D., et al., *Genomewide Association Study of Severe Covid-19 with Respiratory Failure*, June 17, 2020, DOI: 10.1056/NEJMoa2020283.[15]

In sum, Mr. Bosyk's medical conditions individually, and in aggregate, place him in a CDC-recognized group that is at elevated risk of severe complications or death from COVID-19.

**2. Compassionate release is appropriate upon consideration of the serious risk to Mr. Bosyk, his personal characteristics and release plan.**

After finding "extraordinary and compelling reasons," the Court must still determine that a sentence reduction would be consistent with Sentencing Commission statements. 18 U.S.C. § 3582(c)(1)(A). Most importantly, the court must determine whether Mr. Bosyk would be a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).

Mr. Bosyk is a non-violent offender with strong family support and a stable residence in which to live should he be released. Before he was convicted of the instant non-violent offense, he had zero criminal history points. BOP classified Mr. Bosyk as having a minimum recidivism risk level. See Exhibit G.

If released, Mr. Bosyk would live with his wife and young son in Hamilton, Virginia. As

---

[13] https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(20)30211-7/fulltext
[14] https://www.nejm.org/doi/full/10.1056/NEJMoa2007621
[15] https://www.nejm.org/doi/full/10.1056/NEJMoa2020283

set out in his *pro se* motion and Exhibit H, Mr. Bosyk's wife salary is sufficient to support the family and Mr. Bosyk would not need to work and thereby put himself in harm's way. Additionally, Mr. Bosyk health needs can be covered by his wife's health insurance. *See* Exhibit H.

As an added measure of assurance that Mr. Bosyk will pose no danger to the public, this Court also could impose a period of home confinement as a condition of his supervised release. With or without home confinement, if released, Mr. Bosyk would be subject to supervision, which would further assure his productive and law-abiding return to the community. *See, e.g.*, *Gall v. United States*, 552 U.S. 38, 44, 48 (2007) (rules governing probation constitute "a substantial restriction of freedom"). If, on the other hand, the Court permits Mr. Bosyk to find employment, he can readily find work as a mechanic. As set out in Exhibit I, an auto repair shop has offered Mr. Bosyk work as a mechanic, enabling him to contribute to the support of his family and be a contributing member of society while also maintaining social distance regimens. *See* Exhibit I. Regardless, this Court will be able to monitor closely his adjustment to release and penalize him, including by re-incarceration if he violates any conditions of release.

In addressing a defendant's potential danger to the community, courts have found that granting release in the context of the Covid-19 pandemic better ensures public safety by decreasing the prison population. In one recent decision, a district court found that the "'physical and mental health' factor cuts in favor of release for any defendant during this public health crisis." *See, e.g., United States v. Davis*, 2020 WL 1529158, at *4 (D. Md. Mar. 30, 2020) ("If released, Davis will be removed from a custodial setting where the risk of infection is higher for everyone, including the healthy, and he will live in the community where he is able to practice social distancing, self-quarantine, self-isolate if infected, and seek medical treatment if

necessary."). For the same reasons, Mr. Bosyk's release would not present a danger to the public, but instead would further public safety.

## **CONCLUSION**

Each day in custody is increasingly risky for Mr. Bosyk. As universally acknowledged, inmates have a very limited ability to practice social distancing or other protective measures to minimize the risk of infection with Covid-19. Put bluntly, when Covid-19 inevitably arrives in force at FCI Allenwood, Mr. Bosyk will have little chance of minimizing his risk, all the while knowing that he is especially vulnerable should he be infected. Mr. Bosyk has formulated a release plan that will adequately address the concerns presented by Covid-19, protect the public, and ensure his successful transition into the community. In these circumstances, justice does not require that Mr. Bosyk remain incarcerated, rather, compassion warrants his release. Accordingly, Mr. Bosyk respectfully requests that this Court order his immediate compassionate release, with or without a period of home confinement.

Respectfully submitted,

NIKOLAI BOSYK
By Counsel

___/s/_____
John C. Kiyonaga
600 Cameron Street
Alexandria, Virginia 22314
Telephone: (703) 739-0009
Facsimile: (703) 340-1642
E-mail: john@johnckiyonaga.com
Counsel for Defendant

## Certificate of Service

I hereby certify that the foregoing was filed electronically with consequent service on counsel for the Government.

_____/s/_____

John C. Kiyonaga