IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | CRIMINAL NO. 1:17-cr-302 |
| NIKOLAI BOSYK, | ) | |
| | ) | |
| Defendant. | ) | |

**United States' Response in Opposition to
Defendant's Motion for Compassionate Release**

The defendant, whose conduct consisted of downloading thousands of videos and images of child pornography, including a video of a toddler being sexually absued, now seeks emergency compassionate release from a 60-month sentence imposed for his significant criminal activity. Dkt. No. 89.  The government strongly opposes compassionate release for a defendant whose criminal conduct contributed to the marketplace for sharing the sexual exploitation of children and who tried to hide his criminal conduct by using the dark web to traffic in child pornography.

**Background**

Last week, the defendant filed an emergency motion for compassionate release because the correctional facility where he is located experienced an increase in COVID-19 cases.  *See* Dkt No. 89.  The emergency motion comes after a separate motion for compassionate release was recently denied without prejudice because, in part, the defendant could not show that he was at particularized risk of contracting COVID-19 at Allenwood Low FCI.  Dkt. No. 88.  In addition to the other factors the court should take into account, which are still germane in response to this

motion (*See* Dkt No. 86 ("Government's Response to Def's Mot"))[1], the defendant still cannot show that he is at particularized risk of contracting COVID in his correctional facility or that release is appropriate in examining the statutory sentencing factors. As a result, his motion should be denied.

**Argument**

**I.      The defendant has not established a sufficient basis for compassionate release.**

The defendant bears the burden to demonstrate that he is entitled to compassionate release under § 3582(c)(1)(A)(i).  *See White v. United States*, 378 F. Supp. 3d 784, 785 (W.D. Mo. 2019); *see also generally Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56–57 (2005) ("Absent some reason to believe that Congress intended otherwise … the burden of persuasion lies … upon the party seeking relief.").  Compassionate release is not appropriate on these facts because the defendant has not established "extraordinary and compelling reasons" for such relief under § 3582(C)(1)(A)(i).

Courts have generally agreed the existence of the pandemic, standing alone, is not a sufficient basis for granting compassionate release.  As the Third Circuit put it, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."  *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  Instead, courts in this district have found "extraordinary and compelling reasons for compassionate release [on the basis of COVID-19] when an inmate shows both a particularized susceptibility to the disease and a particularized risk

---

[1] The government respectfully requests that the Court incorporate the arguments made in its prior filing on compassionate release to this motion,

of contracting the disease at his prison facility." *United States v. White*, — F. Supp. 3d —, 2020 WL 1906845, at *1 (E.D. Va. Apr. 17, 2020) (quoting *United States v. Feiling*, — F. Supp. 3d —, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020)).[2]

Because the defendant has not satisfied these criteria, the Court should deny his motion.

**A.    The defendant has not shown that his prison facility is at heightened risk of a coronavirus outbreak.**

While Bosyk can show that his obesity is an extraordinary and compelling reason for compassionate release, with respect to an individualized showing regarding Bosyk's prison facility, his claim is unpersuasive.  He currently is incarcerated at FCI Allenwood Low, a low security BOP facility.  According to the latest statistics available from the BOP, FCI Allenwood Low currently has 43 inmates currently testing positive for COVID-19; 21 inmates previously testing positive who have since recovered; and *no inmate deaths*.  Those numbers are relative to a total inmate population of 918.

The facility continues to adhere to the BOP modified operations plan described above in the government's responsive pleading at Dkt. No. 86 and is now not accepting any visitors until further notice.  For all of these reasons, Bosyk has not shown, in any particularized fashion, that he is entitled to additional relief based on the risk of contracting COVID-19.  *Cf. United States v. Campos-Ramenthol*, 805 F. App'x 328, 330 (5th Cir. 2020) (defendant not entitled to pretrial release due to COVID-19 where "[t]here were no reported cases of COVID-19 at the jail" where he was housed and "the jail has procedures in place in case of an outbreak, including the

---

[2] *See also United States v. Little*, No. 1:10-CR-135 (CMH), 2020 WL 3442173, at *2 (E.D. Va. June 23, 2020) (adopting the criteria from *Feiling*); *United States v. White*, No. 3:18-CR-61 (HEH), 2020 WL 3442171, at *5 (E.D. Va. June 23, 2020) ("Defendant's request for release on home confinement is based upon nothing more than 'the mere possibility that COVID-19 will spread to his facility'-a fear that is insufficient to justify release."(citing *Feiling*)).

isolation of high-risk inmates").

**B.     The defendant has not shown that his release plan reduces his risk of contracting COVID-19.**

As one magistrate judge has concluded, when there are no cases of COVID-19 at a

particular facility, "it would be speculative to say whether [a defendant's] release plan … truly

mitigates [his] health risks rather than potentially exacerbating them." *United States v. Duncan*,

— F. Supp. 3d —No. 18-CR-40030-1 (HLT), 2020 WL 1700355, at *1 (D. Kan. Apr. 8, 2020).

That same logic applies here. Indeed, the defendant proposes to be released to live with

his wife and young son in Hamilton, Virginia.  *See* Dkt. No 83. When the government previously

responded to the defendant's motion, Virginia had identified 142,010 instances of coronavirus

infection, leading to 3,060 deaths.  *See* Dkt No. 86 at 10.  And Loudoun County, where Hamilton

is located, had identified 6,698 instances of coronavirus infection, leading to 123 deaths. *Id.*

**Now Virginia has identified 285,149 and 4,414 deaths**.  *See* Coronavirus Data,

https://www.nytimes.com/interactive/2020/us/virginia-coronavirus-cases.html.  And Loudoun

County now has identified 12,029 cases with 154 deaths. *Id.* Those numbers stand in stark

contrast to the 43 cases of COVID-19 at FCI Allenwood Low and *no inmate deaths*.

Moreover, in light of the risks posed by his release, the defendant does not, as he claims,

have "release plan that will adequately address the concerns presented by COVID-19."  Dkt. No.

83 at 11. Indeed, defendant's "plan" is very sparse, including that Bosyk "would live with his

wife and young son" and his "health needs can be covered by his wife's health insurance." *Id.* at

10.

Notwithstanding defendant's release plan, defendant's release will increase the risk of

exposure for defendant, his family, and anyone with whom they come into contact, including

court employees, *such as probation officers, who will be required immediately interact with and*

*supervise defendant under demanding conditions, likely for an extended period of time*. Further, it is not clear that defendant's immediate release would afford him unrestricted access to his private healthcare providers.

As demonstrated by the record in this case and the defendant's own exhibits, he receives a variety of health care treatment while incarcerated. The defendant has not shown that he would have greater, unfettered access to medical care during this pandemic if released. *See United States v. Feiling*, — F. Supp. 3d —, 2020 WL 1821457, at *8 (E.D. Va. Apr. 10, 2020) ("Defendant's release on home confinement presents its own risks to Defendant's health, the health of his family and public safety."); *see also United States v. White*, No. 3:18-CR-61 (HEH), 2020 WL 3442171, at *6 (E.D. Va. June 23, 2020) ("[I]t is not clear to this Court that Defendant would be safer from the virus on home confinement."); *United States v. Brady*, No. 18-CR-316 (PAC), 2020 WL 2512100, at *4 (S.D.N.Y. May 15, 2020) (denying compassionate release because releasing the defendant "from prison may be to simply take him out of the proverbial frying pan and place him into the fire, as the general public continues to suffer from COVID-19 as well."); *United States v. Chappell*, No. 16-CR-512 (LTS), 2020 WL 3415229, at *3 (S.D.N.Y. June 22, 2020) ("The record also demonstrates that Mr. Chappell is regularly receiving appropriate medical care at his facility, and Mr. Chappell has provided no indication that he will have ready access to the requisite medical care for his serious health concerns if his request for immediate home confinement or transfer to a halfway house is granted.").

## II.   In the exercise of its discretion, the Court should deny compassionate release in light of the statutory sentencing factors.

18 U.S.C § 3582(c)(1)(A) expressly directs the Court to consider the statutory sentencing factors under 18 U.S.C. § 3553(a) in adjudicating a compassionate-release motion.[3]  Here, these

---

[3] In *United States v. McCoy*, — F.3d —, 2020 WL 7050097 (4th Cir. Dec. 2, 2020), the Fourth

factors counsel against granting a reduction in the defendant's sentence.

1.    *Nature and Circumstances of the Offense*: The conduct that the defendant

engaged in is plainly disturbing. He was an avid consumer of child pornography, including child

pornography that featured children as young as toddlers. He used the dark web to consume such

content and to attempt to hide his criminal behavior. His conduct evidences that he is a danger to

the community and should remain detained.  *See Coleman v. United States*, No. 4:17-CR-69

(RAJ), 2020 WL 3039123, at *5 (E.D. Va. June 4, 2020) ("[T]he Court is concerned that

Petitioner's release plan does not adequately protect the public from the potential of a subsequent

offense involving child pornography." (citing 18 U.S.C. § 3553(a)(2)(C); U.S.S.G. §

1B1.13(2))); *United States v. Sears*, No. 19-CR-21 (KBJ), 2020 WL 3250717, at *3 (D.D.C.

June 16, 2020) ("[G]iven the ease with which child pornography is accessible in the modern

world, Sears's release is likely to require stringent and frequent monitoring.  This, too, poses a

risk to the community, because the need for intensive monitoring in the age of COVID-19 would

likely result in heightened safety risks ... to the probation officers who would be tasked with

---

Circuit held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to
compassionate release motions brought by inmates under 18 U.S.C. § 3582(c)(1)(A)(i). *Id.* at *6–
9.  *McCoy* noted, however, that § 1B1.13 "remains helpful guidance even when motions are filed
by defendants." *Id.* at *7 n.7.

In its broadest terms, *McCoy* thus holds that although § 1B1.13 is no longer the applicable policy
statement for compassionate release motions brought by inmates, defendants still must meet the
"heightened standard" required by § 3582(c)(1)(A)(i). Both before and after *McCoy*, defendants
must clear the "extraordinary and compelling" threshold set forth in the statute. As *McCoy* put it,
such relief will be granted in "truly exceptional cases[.]" *Id.* at *12. In other words, the defendant
must present circumstances that are "[b]eyond what is usual, customary, regular, or common,"
Extraordinary, *Black's Law Dictionary* (11th ed. 2019), or "go[] beyond what is usual, regular,
or customary," or that are "exceptional to a very marked extent." "Extraordinary." *Merriam-
Webster.com Dictionary*, Merriam-Webster, https://www.merriam-
webster.com/dictionary/extraordinary. Accessed 3 Dec. 2020. *McCoy* does nothing to displace
that "heightened standard."

monitoring his behavior….") (internal quotation marks and citation omitted).

       2.     *The Characteristics of the Defendant.* The defendant rests his compassionate release motion on his obesity as a risk factor identified by the CDC. The fact that an inmate has established an extraordinary and compelling reason does not resolve the inmate's entitlement to a reduction in sentence. Indeed, many courts have determined that an inmate's condition of obesity, particularly for a younger defendant such as Bosyk, standing alone is insufficient to warrant a sentence reduction under 18 U.S.C. 3582(c)(1). *See, e.g., United States v. Tranter*, 2020 WL 3841268 (N.D. Ind. July 8, 2020) (release denied for Elkton inmate who has served only a year of 60-month child pornography sentence due to offense and nature of conditions even though defendant suffered from obesity); *United States v. Aguilar*, 2020 WL 6081779, at *4 (N.D. Cal. Oct. 15, 2020) ( relief denied to 27-year-old with BMI of 37.5); *United States v. Votaw*, 2020 WL 3868468, at *2 (E.D. Cal. July 9, 2020) (obesity BMI of 37.9 not sufficient for relief); *United States v. German*, 2020 WL 5849530, at *2 (D.N.H. Oct. 1, 2020) (obesity – BMI of 36 – of otherwise healthy 30-year-old is insufficient); *United States v. Edison*, 2020 WL 3871447, at *3 (D. Minn. July 9, 2020) (obesity alone (BMI of 35.4) "fails to meet the demanding standard for compassionate release."); *United States v. Whitsell*, 2020 WL 3639590, at *4 (E.D. Mich. July 6, 2020) (declining to find obesity alone as sufficient noting that "Other district courts have granted compassionate release only upon a finding of numerous and severe medical conditions that place them at a significantly higher risk for severe illness from COVID-19.").

       3.     *Need to promote respect for the law and just punishment.* Similarly, there is a need to promote respect for the law and just punishment. Here, the defendant was sentenced to a term of 60 months imprisonment. Granting the defendant release would limit his incarceration

for a crime in which Congress intended that *the minimum sentence* be five years imprisonment. The nature of the conduct counsels for continued incarceration. *United States v. Pawlowski*, — F. App'x —, 2020 WL 3483740, at *2 (3d Cir. June 26, 2020) (affirming denial of relief where release "would effectively reduce Pawlowski's sentence from 15 years to less than two years' imprisonment"); *United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) ("Despite Kincaid's assertion that the amount of time served is not a proper basis for denying compassionate release, the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."); *Porter-Eley, v. United States*, No. 4:16-CR-89 (RAJ), 2020 WL 3803030, at *3 (E.D. Va. July 6, 2020) ("Petitioner has served a small percentage of her term of incarceration implicating the need for deterrence and a sentence that reflects the seriousness of her offense."); *United States v. Bogdanoff*, — F. Supp. 3d —, 2020 WL 2307315, at *6 (E.D. Pa. May 8, 2020) (denying compassionate release where the inmate had served only seven years of an 18-year sentence, and noting that the case was "much different than others where defendants [sought compassionate release] at the end of their sentence"); *United States v. Moskop*, No. 11-CR-30077 (SMY), 2020 WL 1862636, at *1–2 (S.D. Ill. Apr. 14, 2020) (denying compassionate release where the inmate had served less than 10 years of a 20-year sentence and explaining that the "sentencing objectives of specific deterrence and protecting the public [would] not [be] fully served by less than 10 years of incarceration").

*     *     *

Finally, if this Court were to disagree with the United States' position, any release order should require defendant to undergo a 14-day quarantine controlled by BOP.

8

**Conclusion**

For the foregoing reasons, the Court should deny the defendant's motion for

compassionate release.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney


_____
                    /s/

Nathaniel Smith III
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Office:    (703) 299-3700
Fax:       (703) 299-3980
Email:    Nathaniel.Smith2@usdoj.gov

9

**Certificate of Service**

I certify that on December 16, 2020, I filed electronically the foregoing with the Clerk of

Court using the CM/ECF system, which will serve all counsel of record.

By:   _____/s/_____

Nathaniel Smith III
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Office:   (703) 299-3700
Fax:       (703) 299-3980
Email:   Nathaniel.Smith2@usdoj.gov